First case this afternoon is case number 4150053 People v. Derrick Caetano-Anolles, I don't know if I pronounced that correctly, for the appellant, James Martinkus, and for the appellee, Julia Wyckoff. May it please the court. Counsel.  As noted, I represent Derrick, the defendant in this case. In order to convict someone of violating order of protection, or in this instance, violating a stocking no contact order, there's two things that the state must prove. They must prove an active reis, actus reis, and a mens rea. Actus reis, Latin for meaning a guilty act, mens rea, Latin for meaning a guilty mind. Reis and rea simply change form because they modify a noun, one which is masculine, reis, and the other is feminine, mens. That's the only difference. When you look at those definitions, actus reis means that it did something that was in violation of the actual order. That's the first issue. The second issue under mens rea is if you did come within the order and you violated its terms, did you have intent? Did you knowingly do it? Let me give you an illustration. If a petitioner seeks an order of protection, or in this case, no stocking no contact order, and receives one, and the defendant is precluded from getting within 300 feet of the petitioner, the defendant goes and visits his mother at her home. Unbeknownst to him, the protected party is in the home next door, well within the 300 feet. The person comes out after visiting his mother is on the stoop. The protected party sees him, calls the police. He may have technically committed an actus reis because he was within the 300 feet. That's prohibited in the order. But clearly there's no mens rea. He didn't know about the other person being there. There's no basis at all for a court to conclude that he had knowledge or intent, a guilty knowledge, to violate the order. And that's really what you have here. I state in the brief the case of People v. David because I think it sets forth very clearly these rules that I'm referring to. To quote David, it says, the offense of violating an order of protection is not a strict liability offense. And that's what I think former Judge Richard Klaus was trying to do here, making an absolute liability offense. The state is required to prove both actus reis, a guilty act, and mens rea, a guilty mind. So clearly you have a situation where the state must prove both in order for there to be a conviction. And the David court continues. It says, the question on appeal is whether the state proved beyond a reasonable doubt that the defendant intentionally committed an act prohibited by the order of protection. That comment obviously goes to the mens rea. When you look at this particular case, you start off by looking at the statute. Does the statute define what the mens rea is? And it does. This statute is obviously newer than the order of protection statute. Some of the things I think that you've seen in the brief with respect to Illinois patterns or instructions, there really weren't any that would apply for a no contact stocking order. The only ones that the court relied upon, or at least considered or mentioned, was those applicable to a violation of order of protection. But if you look at the actual statute, it says, quote, a stocking no contact order shall order one or more of the following. Prohibit the respondent from knowingly coming within or knowingly remaining within a specified distance of the petitioner or the petitioner's residence, school, daycare, or place of employment. So here, the very statute at issue specifies the mens rea. You have to have knowledge. It has to be willful. It has to be intentional. You have to knowingly violate the order. I know I'm not supposed to go within 300 feet, but I'm going to do it anyway. And clearly, that's not what you have here. You look at the information, because I think that's telling, too. What did the state believe it had to prove? The information states, quote, the defendant did knowingly commit an act that was prohibited by said stocking no contact order, in that the said defendant entered a space within 100 feet of Aaron Frimmel's place of employment, located at Roger Davis Lab, 600 South Matthews, Japan, Illinois. Now, unfortunately, the language which the state used was correct with respect to knowingly, but it was not correct in the sense that it didn't quote the order. The order didn't say place of employment. What Judge Clemens did on January 14th was enter a restriction order against my client, which said, quote, Respondent is ordered to stay at least 100 feet away from petitioner's workplace at 600 South Matthews, Japan, Illinois. My client's a graduate student. He goes to classes within that restriction, if you look at this giant building. The petitioner, in his petition, states, my address is the 405 RAL, the abbreviation for this Roger Evans Laboratory. So right off the bat, you have a situation where it would appear to someone reading this that the restriction is his workplace, his workstation. In the brief, we talk about definitions. The office where he's at. And that would be a very reasonable interpretation. But again, if in fact there is any discrepancy, if there's any ambiguity in terms of what that order meant, did it mean he could be 100 feet from the building? Isn't that what it said? No, it's not at all what it said. I don't think Judge, it said workplace at. In fact, the best, I think, example of that is when the plenary came into place, what did Judge do? The Judge changed it. And the plenary said, he's ordered to stay at least 100 feet away from 600 South Matthews, Japan, Illinois. It now named the building. It said, you can't go within 100 feet of this building. Not someplace within the building. And that's the, the David Court is a good example of that, because in the David Court, the issue was whether or not he could come on the premises, or could he go inside. And it was that exact same interpretation. What does the order mean? Does it mean that someone is violating it if you simply come upon the premises, or under those circumstances, did he have to go inside? And that is the issue. And David says, if the language contained in the order of protection reasonably can be interpreted in two different ways, it is ambiguous. In a criminal context, when the review of the court is presented with ambiguous language to enforce, the principle of lenity is applied. Under this principle, the language of the order of protection must be strictly construed in favor of the accused. Judge Klaus, in this instance, took away from the jury, the province of the jury invaded it, both issues. The issue of actus reus and the issue of mens reus. He took away the issue of what does the order mean. That's for the jury to decide whether or not my client violated the terms of the order. He, sua sponte, decreed that, in this instance, it means just the location of the building. That wasn't for him to decide. When he decides that, it takes away the actual act that the jury is supposed to determine my client committed. You keep saying jury, but wasn't this a jury trial? It was initially, Judge, but it started off as a jury trial. It started off as a jury trial, and because of what took place, where the judge repeatedly admonished my client's attorney, who's in our firm, another attorney, former state's attorney, that he's going down the wrong path, this isn't what we told him to do, that you're trying to have jury nullification, and on and on and on. Mr. Dill asked me repeatedly, Judge, could we please take this, have the jury outside so we can discuss this? No. He admonished him in front of the jury. The jury heard all this. At that point, the jury was so poisoned that Mr. Dill had no choice but to waive jury at that point and go in front of the judge for a bench trial. Mr. Martinkus, a question about Defendant's Exhibit No. 4. This is the diagram that you have a circle around Petitioner's actual office or the actual area within the building, and then a larger, not circle, but outline that I think is made to represent 100 feet from the perimeter of the building itself. And that's what it's meant to show. It's meant to show that if you take 100 feet from around the building itself, it actually encroaches into Defendant's workplace. Is that right? Judge, yes. I think what it says is if you measured from his workstation, clearly my client did not come within 100 feet. If you measured from the edge of the building where he went to class, then it would be, yes. Okay, and I don't know this because I didn't see it in the record, but the trial court's order, as you quoted it, says that the respondents must stay at least 100 feet away from Petitioner's workplace at 600 South Matthews. Judge Klaus interpreted that to mean 100 feet from the building located at 600 South Matthews. It doesn't say, the order doesn't say that. And what I'm getting at is 600 South Matthews, does that encompass ground beyond the building itself? I think it does, Judge. I think that, again, I don't want to misstate anything, but my understanding is that the 600 South Matthews location or address encompasses a large, multifaceted building that has various things within it, including the Rogers lab where this individual worked. Well, is that in the record? What's shown in the exhibit was before the court. It may not have been in the record because, again, we never got any opportunity to put that testimony out. That's the exact point. When the judge says you cannot put on any evidence with respect to what the defendant's understanding of the order is. We had his attorney, we had an affidavit, his parents, that basically said when we went in and got this order, it was not the intent to restrict him from going to class and getting his Ph.D. It was never the intent to measure this from the outskirts or the outlines of the building. It was always the intent to measure it from the workplace. And, again, this is what the petitioner in his petition said. This is where I work, at this 6045 RAL. So it's that inability to present any evidence where the judge, sua sponte, decides on his own what, in fact, the mens rea was. That it wasn't necessary. In fact, the judge said there is no mens rea. It is not relevant in this case. Once you show that there's been service of the order itself, that's it. There's nothing further you have to show. Mr. Bartinkus, the order itself didn't say to stay away 100 feet from 405 RAL. It did not. It used the word workplace. Well, it gave the address. But it said the workplace end. But, see, even if we're having this conversation, it shows exactly this. I think any reasonable person, I would interpret it to mean that there's a workplace somewhere in this building. And I'm going to measure it from 405 RAL. And that's what my client did. He relied upon Attorney Harvey Welch. He was, in a way, helping this grandparent. But how would that work, for example, when the person who comes in to get the order of protection is going in and out of the building? Under your theory, your client would not be prohibited from being right next to him if he's going in and out. No. If he's not within 100 feet of his office. Because, Your Honor, there was a separate section in the order that said he had to stay so many feet away from the petitioner. So you have two sections here. One was specifically he couldn't come within, I don't remember, 300 feet, 500 feet of the petitioner. So independent of anything with respect to the building or this room, he could never come within so many feet of the petitioner. So that's why this is, I think, especially ambiguous. Because now we're talking about he knows he can't be near this individual, and there's never any issue about my client doing anything. He's a Ph.D. student. He's going to class. That's all this ever was, nothing more. There was never a suggestion that he saw the petitioner. Well, wasn't there an order at one time that did, in so many words, specify the workstation as the place where the 100 feet started from? Judge, I don't recall that. The only thing I know is that the initial order, the one we're talking about, said that he had to stay away from, quote, petitioner's workplace at 600 South Matthews. The question, from my perspective, is when you have a multifaceted building and you make reference to a particular place within that address, the workplace, is it reasonable for someone to interpret it to mean just that? There was a modified order. I don't think it changes. That's my recollection. I think I have the language here. Okay. And it added the following language, which would be, quote, paragraph 5 of the order is modified to exempt the north wing of the chemical life sciences building located at 601 South Goodwin, Urbana, Illinois, end quote. That suggests that there was an order. I'm sure clients could have seen where it was specified that it was the workstation. And the order in question here, the order why we are here today, doesn't have that language. So there was a way to specify workstation. He should have been aware of that. The order that we're here on today didn't do so. Right, but I don't think you then can say that you then should interpret it as it's my client's fault for not having it be more specific. Lenity is exactly the opposite. If there's any sort of ambiguity, the law says you have to interpret it in favor of the accused. In this instance, but see, all the questions you asked, those are excellent questions, and those would have been questions that would have been great to have put evidence on. You could have asked him, what was your understanding? How did you get this understanding? This is what I was told. My attorney told me this. I knew that, in fact, there was a place at 405 where he worked. My understanding was I could go to class. I would have never agreed to this order. Things of that nature. All of that. Then a jury could sit here and say, you know, this guy's full of bees. I don't believe a word he's saying. I think he knew dang well that he wasn't supposed to go on the order. The jury could say, you know what, he certainly, he might have violated this thing if you interpret the order to mean the building, but clearly he didn't do it on purpose. He didn't intentionally do it. He never saw this guy. He never went after this guy. All of the things, you know, and keep in mind, too, Judge, that the rape case. Well, that would just then be, would it not, a mistake of law, which is not a defense? No, it's not a defense if it's a mistake of law, but if it's a mistake in fact. Because you can have a mistake in the law, but this is not the law. This is a fact issue of what does this order mean. And Ramos says. Okay, normally when there's an interpretation of a statute or a rule, that's a question for the court to decide. Yes, but this is. Well, why would a court order be any different? Do you have any cases that says that? I mean, yeah. I mean, I think the cases I'm talking about, the Davitt case, when it talks about it's the jury's province to find whether or not there's a mens rea and an actus reus. I mean, it's not the judge's determination to make it and say, Jury, we don't care what you think. I think you violated it because I interpret this order to mean the building. That's not what the law says. Our whole jurisprudence isn't based upon that. There are the cases, there would be many cases where a judge could say, Well, I think this is the way it is. Mr. Martinkus, why couldn't this case have gone forward as a jury trial without any testimony from, who was the attorney, Mr. Welch? Yes. From Mr. Welch or anything in terms of what was said in the procurement of the emergency order of protection and simply have argued to the jury in closing that your client did not violate the order of protection or the no-contact stalking order simply because he did not get within 100 feet of petitioner's actual workspace. Why wouldn't that have been allowed? Because Judge Klaus Suosponte, when Mr. Dill made his opening statement to the jury and corrected the prosecutor, the prosecutor quoted the language in the information, not the language that was in the order. Mr. Dill started to point that out. The court, Suosponte, said, We're not going down this road. You're not going to be able to do this. And this is when he blasted Mr. Dill and said, You can't do this. He took away that exact argument. And what was amazing to me is what was the dialogue right before that? Here's the dialogue that went in between the court and Mr. Dill. Mr. Dill, So all I have to argue in order is the act itself, the actus reus. Court, That's right. And I have to argue that that act did not violate that order. That's right. And if the jury's interpretation, then that matters. Court, That's right. Of what that means. That's exactly right, Mr. Dill. The court tells him this 30 minutes earlier. The moment that he makes one attempt in his opening statement to explain to the jury, We don't think that his act violated the order because we believe that the order means this. He was foreclosed. Not only was he foreclosed, but in front of the jury, he was blasted. It wasn't a matter of how it was being phrased because wouldn't it have been perfectly allowable for an attorney to say, Defendant did not get within 100 feet from petitioner's workplace. And just use the wording of the order itself instead of saying, we interpret the order to mean this. Yes. But Judge, but he couldn't do that because what the court said was the workplace is irrelevant. The court on its own said, no, it's not workplace. It's the building. It's the address on Matthew Street. So therefore, Mr. Dill, you can't argue that. You cannot argue that the order isn't violated because he's not 100 feet from the workplace. He took that from him. That's why not only did Judge Klaus forbid any evidence with respect to mens rea, he limited and prescribed and took from the jury our ability to argue what it meant and the jury's ability to determine what it meant. You're exactly right. And that's exactly what we would have done. That's what Mr. Dill tried to do. He explained to the court, this is what I have left, Judge. You won't let me do anything on mens rea. This is what I have. I'm an actus reus. And he says, yes. The moment he does it, he points it out to the jury. It's not what it says. It doesn't say his place of employment. It says workplace. That's what the order says. Mr. Dill approached and basically just lambasted him in front of the jury. I mean, he says, I put it in here, he threatens to hold counsel into contempt. He's telling this in front of the jury. I'm going to hold you in contempt of court because of what you've said. You're talking, he's telling him, accusing Mr. Dill of jury nullification. You've misstated the elements of the evidence. I mean, he told the jury, it's clear to me that perhaps things I thought were clear are not clear. I mean, you know, I've tried hundreds and hundreds of jury trials, and I tell you what, if you're put in that position, if the court does that to you, your chances of credibility with the jury is shot. I mean, they're going to look at the judge basically tearing you apart, and what are you going to do? Mr. Dill was put in a position where the judge said, well, you know, basically if we can go forward here, I'll give you a $200 fine. Now what's he going to do? Is he going to go to trial and a jury after being admonished with the men's rate taken away, the actress rate is taken away? He's going to take a chance that former Judge Klaus is going to sentence him to a year in jail? No, he's not going to do that. The only pragmatic thing he could do was to take this out and do a stipulation bench trial. And this is a stipulated bench trial, I'm sorry. You will have rebuttal. Okay. Thank you. Thank you. Ms. Wyckoff. Thank you, Your Honor. May it please the Court, Mr. Martinkus? Go ahead. Your Honors, defense counsel is right. This is not a strict liability offense. Defense counsel in his reply brief has suggested that the state stumbled into the same errors made by the trial court. Your Honors, the state agrees with the trial court. The trial court applied the proper law to the facts of this case. Your Honors, when you have a violation of an order of protection, defense counsel is right. There is an actus reus, there is a mens rea. The act would be that the defendant engaged in an act which violated the order. Here the order stated, respondent is ordered to stay at least 100 feet away from respondent's workplace at 600 South Matthews in Urbana, Illinois. Your Honors, the defendant did enact, but violated that order. What we have here is the act, the actus reus is met. That was demonstrated as the state suggested in both their opening arguments and the offer of proof that was offered to the judge during the stipulated bench trial. The petitioner saw defendant in the prohibited area, defendant signed into class in the prohibited area, and security cameras from the U of I building had footage of defendant in that area. Your Honors, this is not strict liability. There is a mens rea element in terms of defendant knowingly engaging in an act. However, that mens rea element is different than what counsel has suggested today and what defense counsel suggested in the trial court below. Ms. Weickoff, Mr. Martinkus, as I understood his argument here, it's that Judge Klaus ruled in Lemonade that defendant's counsel was not going to be allowed to argue that defendant was not within 100 feet of petitioner's workplace, that he was, the judge was confining what would be allowable argument to what if defendant was within 100 feet of the perimeter of the building. Is that your interpretation of Judge Klaus's in Lemonade ruling? Yes, it is, Your Honor, and I would like to explain that as I think there's been some confusion today about exactly what this PEOPLE v. DAVIT stands for. What we have here in a normal order of protection violation case is the state has to prove two things. One, that the defendant was either served with the order or he had actual knowledge of the contents of that order. And two, that the defendant then violated the order. Your Honor, PEOPLE v. DAVIT stands for the proposition that when there is ambiguity in an order of protection, which is a matter of law for the court to decide if the order itself is ambiguous, then at that point perhaps the rule of lenity applies in determining whether a defendant thought he was violating the order when he engaged in whatever act he engaged in. The judge in this case ruled that this order was not ambiguous, at which point then counsel could argue against the two propositions the state had to prove, that he either didn't violate the act, coming within 100 feet of 600 South Matthews, or that he didn't have knowledge of the order, he wasn't served with the order. Your Honor, the trial court's holding was that this order was not ambiguous, and therefore under PEOPLE v. DAVIT you can't then argue about what defendant thought he was doing when he entered that building. What is 600 South Matthews? Is it the building or is it the land including the building? Your Honor, it's my understanding, I'm just looking at my trusty Google map here, that the 600 South Matthews is the Roger Adams Laboratory. It is a large building. But is it the building or is 600 South Matthews describing a piece of property upon which a building sits? Your Honor, it's my understanding that it's describing the building itself. How do we know that? Because the order of protection states, respondent is ordered to stay at least 100 feet away from petitioner's workplace at 600 South Matthews Street. This is an address. It's an address, exactly. So if someone's describing a residence, they say the residence located at 100 South Pulaski Street or give another street address. But when a street address is given, it's describing a parcel of land, and then they describe the residence which sits upon that piece of land. So I'm just asking here, the stay-away order says 600 South Matthews. It doesn't say the building located at 600 South Matthews. Right, it says workplace now. It says petitioner's workplace. So what does that mean? Should it have, if indeed the land is larger, the 600 South Matthews is actually larger than the outline of the building itself, was that 100 foot perimeter actually larger than what has been shown on this diagram? And was the trial court correct in assuming that 600 South Matthews was strictly defined by the footprint of the building? Your Honor, I believe that the trial court was correct in interpreting it that way. As Justice Pope mentioned during defense counsel's statements here today, that would lead to kind of an absurd result with orders of protection. And so far as that it's just 100 feet from this one room in this one building, then defendant could presumably be inside of this building where he might end up having contact with the petitioner in this case. Your Honor, the reason that the statute reads this way, with the mens rea element being that defendant had actual knowledge of the contents or that he was served, is because then in every single order of protection case, we would be up here having this discussion, or in the trial court the defendant would say, I knew I had an order of protection, but I didn't know that I violated it. This is what would happen every time, and this is why the statute reads this way. It's not strict liability, there is a mens rea component, but that mens rea component is that the petitioner or the defendant knew that there was an order of protection against him. And Your Honor, I know we didn't discuss it too much in defense counsel's opening statements here, but I think that one thing that really demonstrates the defendant knew he wasn't supposed to go to class, is the fact that he was trying to get this order of protection changed, trying to change the wording of it, because he knew that under the way it read, he can't go to class. Your Honor, and I think that's telling evidence that he knew he wasn't supposed to go to class that day. Let me ask you this. Let's say you have a defendant in a comparable case who has a stalking no contest order entered against him, and the stay away order says the defendant is not to be within 100 feet of the petitioner's workplace located at White Oaks Mall. And the petitioner works at the footlocker in White Oaks Mall. Now, does that then mean that the 100 foot perimeter is around the entire White Oaks Mall property, or does that mean 100 feet from the footlocker? Your Honor, I agree with the trial court, and in terms of the hypothetical Your Honor just posed, that would mean you cannot go within 100 feet of White Oaks Mall. That's what the order of protection says. Do not go within 100 feet of the petitioner's workplace at this address. The trial court found that was not ambiguous, and therefore, under People v. Davitt, the defendant cannot then argue that he didn't know he violated that order when he did whatever conduct he ended up doing. Your Honor, here the state proved the two elements that it needed to prove, that defendant had been served or had actual knowledge of the contents of that order, and that he violated them, and the state had evidence to show that he violated them. Your Honor, I'd like to briefly address, there's been some discussion about the trial judge tainting the jury in some way. Your Honors, what happened here was that counsel had time and time and time again been told by the trial court, you cannot make this argument, as a matter of law, I find that this order is not ambiguous. The court told defense counsel that he could argue, one, that the order simply wasn't violated, he didn't go within 100 feet of this address, or he didn't have notice, or he wasn't served or he didn't have actual knowledge of the contents of the order. The court told defense counsel this so many times it's almost painful reading the record. And then defense counsel, the minute he gets up to the podium to give his opening statement, starts to go down that path that everyone had discussed so many times before. Your Honors, the court did not sui sponte, jump in at that time. The state actually objected, because the state could sense that that's the route they were going down. The court, I'm paraphrasing, but said no, this is a premature objection, let him go. Let him talk to kind of put him on notice, you know, you've got a shot here. Defense counsel then continued to go down this workplace is ambiguous path, at which point the trial court jumped in. Your Honors, of course the trial court was going to jump in. They'd held, as a matter of law, multiple times that you cannot make this argument. And then defense counsel, in opening arguments, did just what the court had said multiple times, you may not do. Your Honors, at that time the court had defense counsel and the state engaged in a sidebar discussion. So this talk on the record and by defense counsel today, that the court is yelling at defense counsel in front of the jury, that's not true. This was a sidebar discussion. Whether voices were raised or the jury could hear, it's not clear from the order or from the record now on appeal. But this was a sidebar discussion. The court didn't reprimand defense counsel in open court where the jury was sitting there and could hear. This is a sidebar discussion where the court, again, reiterated the same order it had made time and time again. Your Honors, furthermore, the defense counsel in his brief and today has relied heavily on People v. Davitt. I'd like to briefly distinguish Davitt from what we have today. In People v. Davitt, the court held, as a matter of law, the appellate court found that the order in this case was ambiguous. Your Honors, the language used in the order of protection in People v. Davitt was that defendant was to stay away from the household premise of his ex-wife and that he needed to stay away from his former spouse. The appellate court held that that was ambiguous as a matter of law because household premise, they weren't sure if that included the exterior of the home. There was some discussion in the order that defendant was able to take his children to and from the house and furthermore stay away. Well, that's not very helpful in terms of an order of protection. How far away? What does stay away mean? Your Honors, and for those reasons, the court held in People v. Davitt that the order of protection was ambiguous and therefore defendant's state of mind then mattered in that case. Contrast that to what we have here where the trial court held as a matter of law that the order was not ambiguous at which point the defendant's state of mind or what he thought doesn't matter. The mens rea element is that you were either served with the order of protection or you had actual knowledge of its contents. Defendant was served. Counsel himself even represented that. Defendant was served with the order and he was aware of its contents and the defendant violated that order as demonstrated by evidence that petitioner saw him in the prohibited area. Defendant signed into class and security cameras had footage of him in that protected area. Your Honors, the trial court applied the proper law to the facts of this case but counsel simply would not accept those rulings and that's what led to all these other issues that defendant has raised today. There's no question that defendant knew the terms of the order and he violated them. If Your Honors have any other questions, I would be happy to address them. Thank you, counsel. I see none. Thank you, Your Honor. The state asks that you affirm. Thank you. Thank you. Rebuttal, please.  State's attorney says to the jury, he violated an order that said you can't go within 100 feet of his place of employment. We come up and tell the jury, that's not what it says. The order says respond in this order to stay at least 100 feet away from petitioner's workplace. So if you listen to what state argues, we could never even explain to the jury or make the argument that what was in fact said by the state wasn't the language of the order. That's what we were precluded from doing. How can that possibly not be an invasion of the province of the jury? We can't even argue what the order says. That just makes no sense. The issue here, again, when you look at the colloquy between Mr. Dill and the court, how can you say that the court didn't permit or anyone listening to this wouldn't think you could argue the act? Just raise. All I have to argue now is the act itself. That's right. And I have to argue that the act did not violate that order. That's right. It's the jury's interpretation that matters. That's right. How can you not argue then that the jury's interpretation should permit us at least to say what the order said, as opposed to the state using words that weren't in the order? I mean, I don't know how it gets any clearer than that. The other thing is Ramos. I think Ramos is very important. Ramos said the purpose of the statute is to prevent the state from prosecuting the defendant for violating order protection in instances where the defendant does not know that an order of protection has been entered or does not know what conduct is prohibited by the order. There is no way you can say that there is no reasonable interpretation that his workplace had a separate meaning in this context. And for us not to have been able to even argue that to the jury, not to even be able to tell the jury that what the state said was not what the order itself said. How can that be fair? How can that possibly comport with reasonable due process? It doesn't. This is a situation where the judge made up his mind that this defendant was going to be convicted, that he interpreted what this meant, that no other interpretation than anything, that the actus reus was his decision and mens rea meant nothing. That's not the law. It never has been. Hope to God it never is. This is a case that the evidence didn't support it. You should find that this is a case where you should reverse it and not guilty, or at the very least, send it back to retrial. Thank you. Thanks to both of you. The case is submitted. The court abstains and resets.